**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF | No. CV-04-2541-PHX-SMM |
| NORMA J. HURT, | BK No. 85-3802-PHX-JMM |
| Debtor. | ADV. No. 99-605 |
| D. NELSON, | **MEMORANDUM OF DECISION AND ORDER** |
| Appellant, | |
| v. | |
| Norma J. HURT, et al., | |
| Appellee. | |

Pending before the Court are Appellant David Nelson's ("Nelson") Bankruptcy Appeal Briefs (Dkt. 13-14),[1] Appellee Norma J. Hurt's ("Hurt")Answering Brief (Dkt. 16), Nelson's Notice of Filing Copies of the Record on Appeal (Dkt. 3), and Hurt's First and Second Notice of Filing  Supplementation to Record (Dkts. 17, 20).  Nelson challenges the October 28, 2004 ruling of Bankruptcy Judge Marlar in <u>Hurt v. Wakefield Props., Ltd.,</u> Adversary No. 2-99-00605-JMM.  After considering the record and the arguments of the parties, the Court issues the following Memorandum of Decision and Order.

---

[1]  "Dkt." refers to this Court's file. "Bkr. Dkt." refers to the Bankruptcy Court's file at 2:ap-00605-JMM.

**BACKGROUND**

1

2    The instant appeal is one of many that have arisen from a bankruptcy case that has

3 dragged on for twenty years.  The bankruptcy and many of the related adversary proceedings

4 arose out of the 1978 divorce of debtor Norma Hurt and Milton Pace.  The bankruptcy was filed

5 as an involuntary chapter 11 proceeding on December 9, 1985, and was converted to a

6 voluntary chapter 11 proceeding on January 6, 1986.  Although Hurt's reorganization plan was

7 confirmed on March 26, 1997, she has since been engaged in many lawsuits and appeals

8 stemming primarily from her efforts to sell or quiet title to various parcels of real property.[2]

9    The instant appeal involves a dispute over proceeds resulting from Hurt's court-approved

10 sale of real property known as "1034 East Julie, Tempe, Arizona" (the "Julie Property").  On

11 February 23, 1998, Hurt filed an application to sell the Julie Property.[3]  On March 26, 1998,

12 Nelson filed an objection to the sale of the Julie Property.  On April 1, 1998, the Bankruptcy

13 Court overruled Nelson's objection and entered an Order Confirming Sale Free and Clear of

14 Lien – Liens to Attach to Proceeds.  Nelson never appealed the overruling of his objection.

15 Thereafter, the Julie Property was sold to the highest bidder (the "Julie Property Proceeds").

16    On April 30, 1998, Wakefield Properties, Inc. ("Wakefield") filed a Claim of Lien on

17 the Julie Property Proceeds, claiming $24,000 plus interest at 12% per annum since January 1,

18 1985, via a deed of trust (the "Wakefield Claim").  Hurt argued that the deed of trust was void

19 for lack of consideration and that the 1990 Judgment barred Wakefield's Claim.  In July 1999,

20 the Bankruptcy Court directed that Hurt's objection to the Wakefield Claim be treated as an

21 adversary proceeding (the "Adversary Proceeding"), and set it for trial on December 15, 1999.

22

23    _____

24    [2]  The history of this saga is detailed and extensive.  However, the Court only provides the background facts relevant and necessary for resolution of the pending Appeal.  For a more complete

25 description of this case's history, see the Court's August 28, 2000 Order in No. CV-00-221-PHX-SMM.

26    [3]  The Julie Property was awarded to Hurt via stipulated judgment in Adversary No. 87-199 (the "1990 Judgment").  The 1990 Judgment was appealed to the Bankruptcy Appellate Panel and the

27 Ninth Circuit, each of which affirmed the Judgment.  A petition for certiorari was denied in 1995.

28                                                  - 2 -

On December 20, 1999, after a trial on the merits, the Bankruptcy Court entered a judgment in favor of Hurt on the sole ground that Wakefield produced no evidence of the alleged debt underlying the deed of trust (the "1999 Judgment").

The 1999 Judgment was then appealed by Wakefield.  On August 28, 2000, this Court found that Judge Marlar had failed to consider the impact of a promissory note which had been admitted into evidence.  The 1999 Judgment was reversed, and the case remanded for further proceedings, including the consideration of numerous defenses asserted by Hurt.

Upon receipt of the remand order, the Bankruptcy Court scheduled a status hearing for October 2, 2000.  This hearing was vacated when the Bankruptcy Court was notified that Wakefield had appealed this Court's order to the Ninth Circuit, on the grounds that a re-trial improperly awarded Hurt a second trial on issues she failed to raise during the first trial.

On December 27, 2001, the Ninth Circuit affirmed this Court, and remanded for a new trial.  The Court held that, "because the bankruptcy court found that there was no promissory note to support the deed of trust, it did not address Hurt's alternative arguments."  Therefore, "the note's validity and the alternative theories for denying Wakefield's claim . . . remain open for consideration by the bankruptcy court on remand." (Ninth Circuit Dkt. 00-16931 at 4.)

After the case was remanded, neither party requested a status hearing or a trial setting for 17 months.  On June 11, 2003, Hurt filed a Motion to Dismiss for Failure to Prosecute, requesting a declaratory judgment denying Wakefield's Claim.  (Bkr. Dkt. 60.) Wakefield did not file a written response, but its attorney, Lawrence Slater, appeared at a hearing on the Motion.  Hurt accused Wakefield of purposefully delaying the Adversary Proceeding in order to prevent her bankruptcy from closing.  (Id. 63 at 9-11.)  Mr. Slater represented to the Court that, although he was not certain how the re-trial would be presented, it would not take long to decide whether to resubmit the evidence or to present the evidence differently.  (Id. at 7-8.)

The Bankruptcy Court denied Hurt's Motion to Dismiss on the grounds that "[b]oth parties had an equal obligation to alert the court that it needed to set further proceedings." (Id.. 64 at 5.)  Because the Ninth Circuit's remand order required another trial on the merits, the

1   Bankruptcy Court served Hurt, Wakefield and the United States Trustee with a notice setting

2   the Adversary Proceeding for trial on October 30, 2003.  (Id. 65.)

3        On October 29, 2003, Sutro Enterprises ("Sutro") filed a voluntary chapter 11

4   proceeding in the United States Bankruptcy Court for the District of Nevada. (Dkt. 16, Ex. B.)

5   Sutro's voluntary petition represented that it was formerly known as "Wakefield Properties,

6   Inc." (id.), and claimed to be the owner of the Wakefield Claim.  (Id.)

7        On October 30, 2003, counsel for Wakefield filed a Notice of Filing Bankruptcy and

8   Notice of Stay in the Arizona Bankruptcy Court, representing that "Sutro Investments, Inc.,

9   FKA Wakefield Properties, Ltd., filed a Chapter 11 Bankruptcy proceeding in the District of

10  Nevada."[4]  (Bkr. Dkt. 66.)  That same day, the Arizona Bankruptcy Court vacated the

11  Adversary Proceeding trial on the grounds that Wakefield had filed for bankruptcy in Nevada.

12  (Id. 67.)

13       On December 11, 2003, Sutro filed a Motion to Dismiss its chapter 11 proceeding on the

14  grounds that, following a debtor-in-possession meeting held on December 3, 2003, "it was clear

15  that there is no reason for this chapter 11 proceeding to continue as the sole potential asset is

16  unlikely to ever be part of the estate." (Dkt. 16, Ex. C at 2-3.)  As an additional ground for

17  dismissal, Sutro stated that "the filing of this case may unethically and unnecessarily delay other

18  bankruptcy cases, that have previously been filed and may involve the same asset."  (Id.)  On

19  February 18, 2004, the Nevada Bankruptcy Court granted Sutro's motion to dismiss.  (Id. at 4.)

20       On July 27, 2004, the Arizona Bankruptcy Court served Hurt and Wakefield with a

21  notice setting trial on the Adversary Proceeding for October 28, 2004.  (Bkr. Dkt. 69, 70.)

22       On October 27, 2004, one day before trial, Hurt filed a Pre-Trial Statement alleging

23  several defenses, including that Wakefield's Claim was assigned to Sutro without consideration.

24  (Id. 71 at 7.)  Hurt's trial exhibits included the deposition testimony of Nelson.  (Id.)  Hurt

25

26  ──────────────

27       [4] Although Mr. Slater's Notice incorrectly refers to "Sutro Investments, Inc.," the case number
    confirms that the reference is to Sutro's Nevada bankruptcy proceeding.

28                                        - 4 -

1   certified that her trial exhibits had been made available to all other parties for inspection and

2   copying, and attached a proof of service on Wakefield's attorney.  (Id. at 8-9.)

3       That same day, Sutro-Sandia Corp. ("Sutro-Sandia") filed a voluntary chapter 11

4   proceeding in the United States Bankruptcy Court for the District of New Mexico.  (Dkt. 16,

5   Ex. E.)[5]  Sutro-Sandia claimed to own total assets worth no more than $50,000, including the

6   Wakefield Claim, which it received by assignment from Sandia Trust.  (Id., Exs. E at 1, G, H.)

7   The record contains no evidence of how Sandia Trust obtained the Wakefield Claim.  However,

8   according to the assignment, Sutro-Sandia agreed to pay all obligations and indebtedness owed

9   by Sutro to C&H Management ("C&H") and NMTIX, Company ("NMTIX"), in exchange for

10  the Wakefield Claim.  (Id., Ex. H at 1.)  Sutro-Sandia's Schedule of Business Income and

11  Expenses, prepared by Nelson, identified Nelson as an unsecured nonpriority creditor owed

12  $25,000 for "assumption of debt."  (Id., Ex. G at 1-2, 7, 10.)   C&H and NMTIX are the only

13  other creditors named in Sutro-Sandia's bankruptcy.  (Id., Ex. G at 3, 8, 11.)

14      On October 28, 2004, Judge Starzynski, the judge presiding over Sutro-Sandia's chapter

15  11 case, received a telephone call from Judge Marlar.  Following this telephone call, Judge

16  Starzynski ordered the automatic stay in Sutro-Sandia's case modified, pursuant to §362(d)(1)

17  and §105, "to permit the bankruptcy case of In re Norma J. Hurt, No. 85-3802-JMM, and adv.

18  pro. 99-605 (Hurt v. Wakefield Properties, Ltd.), both pending in the United States Bankruptcy

19  Court for the District of Arizona, to go forward immediately."  (Bkr. Dkt. 74; Dkt. 16, Ex. I.)

20  In his Order modifying the automatic stay without notice, Judge Starzynski found that the New

21  Mexico chapter 11 case "was filed as part of a pattern of serial filings to inhibit the

22  administration of [Hurt's] bankruptcy case and [the Wakefield Adversary Proceeding]" pending

23  in Arizona Bankruptcy Court.  (Dkt. 16, Ex. I at 1.)

24

25      [5] Sutro-Sandia was incorporated only two days before it filed for bankruptcy.  (Id., Ex. F.)  Its

26  business is "real estate/property development & sales."  Nelson is identified as the President, Secretary,
    and sole Director of Sutro-Sandia.  (Id. at 1-2.)   Sutro-Sandia Trust ("Sandia Trust") is identified as

27  the sole shareholder of Sutro-Sandia.  (Dkt. 16, Ex. E at 20, 23.)

28                                          - 5 -

That same day, at 1:30 p.m., Judge Marlar called the Wakefield Adversary Proceeding for trial. No one appeared on behalf of Wakefield; Thomas Rice, bankruptcy counsel for Sutro-Sandia, appeared telephonically. Judge Marlar explained the procedural background of the case to Mr. Rice, referring to both (i) Sutro's bankruptcy filing in Nevada one day before the October 30, 2003 trial; and (ii) Sutro-Sandia's bankruptcy filing in New Mexico one day before the October 28, 2004 trial. (Bkr. Dkt. 73 at 4.) Judge Marlar explained that, rather than participate in filing the required joint pre-trial statement, Wakefield's attorney faxed the Court a document indicating that Mr. Rice had "filed a barebones petition in New Mexico for something called the Sutro Sandia Corporation." (Id.) Upon receipt of that document, Judge Marlar telephoned Judge Starzynski and explained why this trial "needed to proceed." (Id.) After Judge Starzynski modified the automatic stay in New Mexico to allow the Adversary Proceeding to commence immediately, Judge Marlar called the case for trial in accordance with the notice of trial setting previously served on Hurt and Wakefield. (Id. at 5.)

Mr. Rice objected to the trial being held on October 28th on the grounds that he was not prepared to proceed, and he had "no notice of these proceedings; not being present; not . . . having the ability to observe witnesses; to observe evidence." (Id. at 6-7.) Judge Marlar informed Mr. Rice that, as a lawyer in the case, he was required under Rule 11 to have "reviewed all of these matters before . . . filing a chapter 11 for some bogus entity in New Mexico." (Id. at 7.) Judge Marlar concluded that §105 of the Bankruptcy Code required him to protect the jurisdiction of the Bankruptcy Court from abuses like the ones that had been occurring in the case. (Id.) Mr. Rice responded that the attorneys in Arizona should be responsible for trial in the Adversary Proceeding. (Id. at 7.)

Judge Marlar found that Mr. Slater had appeared in the case and had "received notice of the time and place of" trial. (Id. at 7-8.) Based on the fact that Wakefield and its attorney had notice of the trial, and yet no one appeared on behalf of Wakefield, Judge Marlar concluded that Wakefield had abandoned its Claim and engaged in abuse. (Id. at 8.) By minute entry dated October 28, 2004, pursuant §105, Judge Marlar ordered Wakefield's Claim stricken and

1  full entitlement of the Julie Property Proceeds to Hurt (the "October 28th Order").  (Bkr. Dkt.

2  72; 73 at 9-10.)  On November 10, 2004, Judge Marlar entered a Judgment dismissing the

3  Wakefield Claim due to Wakefield's failure to appear and prosecute and "the absence of any

4  evidence whatsoever provided" to support its claim.  (Bkr. Dkt. 82 at 1.)

5       On November 8, 2004, Nelson filed the following documents in the Arizona Bankruptcy

6  Court:  (1) a Notice of Appearance, (2) a Request for Reconsideration, and (3) a Request for

7  Recusal.  (Bkr. Dkt. 75-77.)

8       In his Notice of Appearance, Nelson stated that Sutro-Sandia filed a valid bankruptcy

9  in New Mexico "regarding property which is subject to this bankruptcy and adversary," and

10  described himself as a "valid and necessary creditor" in the Adversary Proceeding.  (Dkt. 16,

11  Ex. S.)  Nelson represented that "Norma Hurt and her representatives" had violated bankruptcy

12  and federal law by "caus[ing] this case to move forward after the filing of bankruptcy by an

13  interested party in New Mexico without due process."  (Id.)

14       In his Request for Reconsideration, Nelson sought a reversal of the October 28th Order,

15  as well as sanctions, on the grounds that Hurt violated various laws as well as the automatic stay

16  issued in Sutro-Sandia's New Mexico bankruptcy case.  (Dkt. 16, Ex. N.)

17       In his Request for Recusal, Nelson asked Judge Marlar to recuse until the Ninth Circuit

18  resolved the complaint of judicial misconduct Nelson had filed against him.  (Id., Ex. P.)

19       On November 10, 2004, Judge Marlar denied Nelson's Request for Reconsideration.

20  Relying on Tilley v. Vucurevich (In re Pecan Groves of Arizona), 951 F.2d 242 (9th Cir. 1991)

21  (Pecan Groves), Judge Marlar found that Nelson was not a party to the Adversary Proceeding

22  and, consequently, had no standing to move  for reconsideration or assert a violation of the

23  automatic stay.  (Dkt. 16, Ex. O.)  Judge Marlar denied Nelson's Request for Recusal as

24  "without merit and without statutory basis."  (Id., Ex. Q.)

25       Nelson filed a Notice of Appeal to this Court on November 12, 2004.  (Dkt. 2.)

26

27

28                                                - 7 -

1  On November 22, 2004, Nelson sought reconsideration of his Recusal Request.  (Dkt.

2  16, Ex. R.)  On December 3, 2004, Judge Marlar denied Nelson's request, on the grounds that

3  the Bankruptcy Court lacked jurisdiction because an appeal had already been filed.  (Id.)

4  **STANDARD OF REVIEW**

5  The district court reviews the bankruptcy court's orders as an appellate court.  See 28

6  U.S.C. § 158; see In re Siegel, 105 B.R. 556, 559 (D. Ariz. 1989).  The bankruptcy court's

7  conclusions of law are reviewed *de novo*, while its findings of fact are reviewed under a clearly

8  erroneous standard.  See In re Tuma, 916 F.2d 488, 490 (9th Cir. 1990).  Review under the

9  clearly erroneous standard is "significantly deferential, requiring a 'definite and firm conviction

10 that a mistake has been committed.'"  Granite State Ins. Co. v. Smart Modular Techs., Inc., 76

11 F.3d 1023, 1028 (9th Cir. 1996) (quoting Concrete Pipe & Prods., Inc. v. Constr. Laborers

12 Pension Trust, 508 U.S. 603, 623 (1993)).

13 The district court, as an appellate court, may affirm the bankruptcy court on any ground

14 fairly supported by the record.  See, e.g., In Re Leavitt, 171 F.3d 1219, 1223 (9th Cir. 1999).

15 However, the reviewing court is not a trier of fact and does not ordinarily make findings of fact.

16 See In re Hotel Hollywood, 95 B.R. 130, 132 (9th Cir. B.A.P. 1988).  Where the trial court

17 could have based its result on an alternate ground, but was not required to do so based on the

18 record, remand rather than affirmance is appropriate.  See McGuckin v. Smith, 974 F.2d 1050,

19 1057 (9th Cir. 1992), overruled on other grounds, WMX Tech. v. Miller, 104 F.3d 1133 (9th

20 Cir. 1997).  When a potentially dispositive issue emerges on appeal, if the appellate court is

21 "not equipped to address the issue, [it] remand[s] to the appropriate court."  RTC Transp., Inc.

22 v. Conagra Poultry Co., 971 F.2d 368, 375 (9th Cir. 1992).

23 **ISSUES ON APPEAL**

24 Nelson claims that Judge Marlar violated the automatic stay in Sutro-Sandia's

25 bankruptcy by commencing trial in the Adversary Proceeding on October 28, 2004.  (Dkt.

26 13.)  Nelson further argues that he was denied due process when Judge Marlar dismissed his

27 notice of appearance and other motions without notice and a hearing.  (Dkt. 14.)

28  - 8 -

1    Hurt responds that Nelson's appeal should be dismissed because he lacks standing to

2    argue that commencement of trial in the Adversary Proceeding violated the automatic stay.

3    Hurt further argues that Nelson has never been a party in the Adversary Proceeding, and

4    thus lacks standing to appeal the denial of his motions by Judge Marlar.

5    The Court finds that Nelson lacks standing to challenge the Arizona Bankruptcy

6    Court's decision to commence trial in the Adversary Proceeding as a violation of Sutro-

7    Sandia's automatic stay.  Alternatively, and in an abundance of caution, see infra at 13, the

8    Court addresses Nelson's arguments and affirms Judge Marlar's October 28th Order.

9                                    **DISCUSSION**

10   **A.     Nelson Lacks Standing to Prosecute A Violation of the Automatic Stay**

11   Although standing is not a difficult concept, the issue in the present case is slightly

12   complicated because two separate bankruptcy cases are involved.  The New Mexico court

13   modified the automatic stay in Sutro-Sandia's bankruptcy case in order to permit the

14   Adversary Proceeding that arose out of  Hurt's 1985 bankruptcy to immediately commence

15   in Arizona.  Confirming that the automatic stay had been modified, Judge Marlar held the

16   previously-scheduled trial in the Adversary Proceeding, and ultimately ruled in Hurt's favor.

17   "Where the original party to a lawsuit decides not to appeal . . . , the intervenor must

18   have independent standing to appeal."  Pecan Groves, 951 F.2d at 245 (citing Diamond v.

19   Charles, 476 U.S. 54, 68-69 (1986)).  This rule derives from the nature of bankruptcy

20   litigation, which almost always implicates the interests of persons who are not formally

21   parties to the litigation, because "[e]fficient judicial administration requires that appellate

22   review be limited to those persons whose interests are directly affected." (In re Fondiller),

23   707 F.2d 441, 443 (9th Cir. 1983).  Thus, "'[o]nly those persons who are directly and

24   adversely affected pecuniarily by an order of the bankruptcy court have been held to have

25   standing to appeal that order.'"  Pecan Groves, 951 F.2d at 245 (citation omitted).

26   In Pecan Groves, a chapter 7 case, the Ninth Circuit held that where a trustee does

27   not appeal an adverse ruling on an alleged stay violation, intervening creditors do not have

28                                         - 9 -

1    independent standing to do so.  Id.  The basis for the holding in Pecan Groves is the Court's

2    determination that the automatic stay provision in §362 "is intended solely to benefit the

3    debtor estate."  Id.  Thus, the Court concluded that if the trustee of the estate does not seek

4    to enforce the protections of the automatic stay, no other party — including creditors — may

5    challenge acts purportedly in violation of the automatic stay.  Id.

6          Applying Pecan Groves here, Nelson clearly lacks standing to challenge Judge

7    Marlar's decision to commence the Adversary Proceeding as a violation of Sutro-Sandia's

8    automatic stay.  Unfortunately, this particular holding of Pecan Groves has recently been

9    questioned and narrowed by courts from this Circuit and others.[6]  Although the Ninth Circuit

10   has not overruled Pecan Groves, and reaffirmed its holding in 1999, see In re P.R.T.C., Inc.,

11   177 F.3d 774, 778 (9th Cir. 1999), the Court finds several additional reasons that Nelson

12   lacks standing to appeal Judge Marlar's decision to commence trial in the Adversary

13   Proceeding as a violation of the automatic stay.

14         First, Nelson is not directly and adversely affected pecuniarily by Judge Marlar's

15   decision to commence trial in the Adversary Proceeding or the October 28th Order.  See In re

16   Gosnell Dev. Corp. of Arizona, 221 B.R. 776, 780 (Bankr. D. Ariz. 1998) (To assert

17   standing, party must "have a direct and immediate interest in the matter at hand"); In re

18   Fondiller, 707 F.2d at 442 (appellant must be directly and adversely affected pecuniarily by

19   challenged order to have standing to appeal).  Judge Marlar's decision to commence the

20   Adversary Proceeding after Sutro-Sandia's automatic stay was modified had no direct or

21   immediate adverse impact on Nelson, because the purpose of the trial was to determine the

22   validity of the Wakefield Claim.  Nelson's only demonstrable interest in the October 28th

23

24         [6] See In re Int'l Forex of California, 247 B.R. 284, 290-91 (Bankr. S.D. Cal. 2000) (automatic
25   stay protects creditors and debtors; limiting Pecan Groves to chapter 7 cases in which (i) trustee opted
     not to pursue appeal and (ii) creditors are guilty of laches); In re Lakeside Country Invs., 1999 WL
26   33490220, *7, n.14 (Bankr. D. Idaho 1999)(Pecan Groves cannot be reconciled with other Ninth Circuit
     cases); Matter of Ring, 178 B.R. 570, 579-581 (Bankr. S.D.Ga. 1995) (Pecan Groves "not particularly
27   persuasive as to the issue of a creditor's standing to avoid a transfer in violation of the stay").

28                                              - 10 -

1   Order is as a *potential* unsecured creditor in Sutro-Sandia's New Mexico bankruptcy.

2   Because the October 28th Order relates solely to the parties involved in the Wakefield

3   Adversary Proceeding, and thus neither directly nor immediately affects Nelson's rights as a

4   creditor in Sutro-Sandia's bankruptcy, Nelson is not a "person aggrieved" by that Order.

5          Second, neither Judge Marlar's decision to commence trial in the Adversary

6   Proceeding nor the October 28th Order diminishes Nelson's property, increases his burdens

7   or detrimentally affects his rights.  See In re Fondiller, 707 F.2d at 443 ("direct and adverse"

8   effect may be found to exist where an order diminishes appellant's property, increases its

9   burdens, or detrimentally affects its rights).  Any contention by him that, as an unsecured

10  and nonpriority creditor in Sutro-Sandia's bankruptcy, his property has been diminished is

11  far too speculative to confer standing on Nelson.  See Kowalski-Schmidt v. Forsch (In re

12  Giordano), 212 B.R. 617, 622 (B.A.P. 9th Cir. 1997) ("party asserting standing must *prove*

13  that bankruptcy court's order either diminishes its property, increases its burdens, or

14  detrimentally affects its rights.") (emphasis added), aff'd in part, reversed in part, 202 F.3d

15  277 (9th Cir. 1999).  Nelson has not filed a reply brief challenging Hurt's assertion that he

16  lacks standing, nor has he proffered any evidence to demonstrate that his rights as an

17  unsecured nonpriority creditor have been diminished or detrimentally affected.

18         Third, Nelson is a purported creditor in Sutro-Sandia's bankruptcy case, but he is not

19  a creditor in Hurt's Chapter 11 case.  Indeed, Nelson's objection to Hurt's request to sell the

20  Julie Property was previously rejected by the Arizona Bankruptcy Court, and Nelson never

21  appealed that ruling.  Because Nelson is not a creditor in Hurt's chapter 11 bankruptcy, he

22  does not qualify as a "person aggrieved" by Judge Marlar's decision to commence trial on

23  the Adversary Proceeding or the October 28th Order.  See Pecan Groves, 951 F.2d at 245 (in

24  order to appeal, "person aggrieved" test requires independent standing by entity not an

25  original party to the action if original party to action does not appeal); Royal Bank of

26  Canada v. Trone, 634 F.2d 459, 460-62 (9th Cir. 1980) (bank that was not creditor of the

27  bankruptcy estate did not have standing to appeal order confirming plan of reorganization);

28                                              - 11 -

1    cf. Salomon v. Logan (In re International Envtl. Dynamics, Inc.), 718 F.2d 322, 326 (9th

2    Cir. 1983) ("[I]n a case involving competing claims to a limited fund, a claimant has

3    standing to appeal an order disposing of assets from which the claimant seeks to be paid.").

4         Fourth, standing subsumes both constitutional and jurisprudential considerations.

5    "Article III of the Constitution requires that the allegedly aggrieved party show that he or

6    she has *personally* suffered some actual or threatened injury that can be traced to some

7    wrongful . . .  conduct and that the injury is likely to be redressed by a favorable decision."

8    Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454

9    U.S. 464, 472 (1982) (emphasis added).  In the present case, Sutro-Sandia, *not* Nelson, is the

10   alleged holder of the Wakefield Claim.  Although Nelson purports to be a creditor of Sutro-

11   Sandia, he has failed to show that reversing the October 28th Order would redress any injury

12   *he personally suffered* from the commencement of the trial in the Adversary Proceeding.

13        Fifth, even assuming, *arguendo*, that Nelson was in some way affected by Judge

14   Marlar's decision to commence the Adversary Proceeding on October 28th, a general affect

15   is insufficient to confer standing.  Because "[b]ankruptcy proceedings regularly involve

16   numerous parties, each of whom might find it personally expedient to assert the rights of

17   another party even though that other party is present in the proceedings and is capable of

18   representing himself,"Nelson is required to "assert his own legal rights and interests, and

19   cannot rest his claim to relief on the legal rights or interests of third parties," such as Sandia-

20   Sutro.  See Tippett v. Umpqua Shopping Ctr., 111 B.R. 303, 305 (B.A.P. 9th Cir. 1990) (in

21   order to have standing to appeal, appellant must have direct and immediate interest in

22   subject of appeal and must assert his own legal rights and interests; appellant cannot rest his

23   claim to relief on legal rights or interests of third parties) (quoting Warth v. Seldin, 422 U.S.

24   490, 499 (1975)).  Nelson's objection to Judge Marlar's order is based entirely on the fact

25   that he is a creditor of Sutro-Sandia, who will not receive anything from the Wakefield

26   Claim.  The attorney for Sutro-Sandia, however, was telephonically present at the Adversary

27   Proceeding, and has not appealed Judge Marlar's October 28th Order.  Because Nelson

28                                             - 12 -

1  cannot show that he is *directly* and *immediately harmed* by the order he seeks to challenge,

2  he lacks standing to challenge that order as a violation of the automatic stay.

3     For all of these reasons, the Court finds that Nelson lacks standing to challenge Judge

4  Marlar's decision to commence the Adversary Proceeding trial on October 28, 2004, as a

5  violation of the automatic stay.

6  **B.**   **Judge Marlar Did Not Violate the Automatic Stay in Any Event**

7     Although the Court finds that Nelson lacks standing to assert that Judge Marlar

8  violated Sutro-Sandia's automatic stay by commencing trial in the Adversary Proceeding on

9  October 28th,Hurt's bankruptcy and related proceedings have dragged on for twenty years.

10  Thus, in an effort to efficiently and expeditiously resolve this proceeding, the Court will

11  address Nelson's contentions in case the Ninth Circuit finds that Nelson has standing.

12     Nelson argues that "Judge Marlar erred by moving forward with the hearing, on

13  October 28, 2004, in violation of the automatic stay in [Sutro-Sandia's] . . . bankruptcy

14  case" (Dkt. 13 at 6).  He concedes, however, that Judge Marlar did not issue the order

15  modifying the automatic stay in Sutro-Sandia's bankruptcy case.  Rather, Nelson submits

16  that the issue of whether "Judge Starzynski was authorized to lift the stay" is "currently on

17  appeal in New Mexico" and must "be resolved in New Mexico." (<u>Id.</u> at 6-7.)  Similarly,

18  both parties agree that, before the Adversary Proceeding was called for trial, the New

19  Mexico bankruptcy court had modified the automatic stay in Sutro-Sandia's bankruptcy in

20  order to allow the Adversary Proceeding "to go forward immediately." (Dkt. 16, Ex. I at 2.)

21  Because Judge Marlar is not the judge who modified Sutro-Sandia's automatic stay to allow

22  the Wakefield Adversary Proceeding to commence, the only decision Nelson can challenge

23  is Judge Marlar's commencement of trial in the Adversary Proceeding on October 28th.

24     Until further order of the bankruptcy court, the automatic stay under §362(a) operates

25  as an absolute bar to the commencement or continuation of judicial proceedings concerning

26  the debtor.  <u>See</u> 11 U.S.C. §362(a)(1).  The automatic stay is not, however, incontestable,

27  and relief from the stay may be requested under §362(d).  Section 362(f) empowers the

28

bankruptcy court to grant *ex parte* relief from the stay in exceptional circumstances. Because the automatic stay freezes in place judicial proceedings, and "'because only an order of the bankruptcy court can authorize any further progress in the stayed proceedings, it follows that the continuation of . . . [the judicial] proceeding can derive legitimacy only from the bankruptcy court order.'"[7]  Noli v. Commissioner of Internal Revenue, 860 F.2d 1521, 1525 (9th Cir. 1988) (citation omitted).  For these reasons, the terms of an order lifting the automatic stay are strictly construed.  Id.

In the present case, the New Mexico bankruptcy court's order did not prohibit the Arizona Bankruptcy Court from commencing trial in the Wakefield Adversary Proceeding, or reaching a decision after a trial.  Rather, the Order modifying the automatic stay specifically stated that the automatic stay was lifted in order to allow Hurt's bankruptcy case and the Wakefield Adversary Proceeding "to go forward immediately."  (Dkt. 16, Ex. I at 2.) The New Mexico bankruptcy court's intent to allow the Adversary Proceeding to commence immediately after the order was issued is also apparent from the Order's reference that the pattern of serial filings interfered with the ability "of the Arizona Court to perform its functions," including administration of Hurt's bankruptcy and the Adversary Proceeding. (Id. at 1.)  Because Judge Marlar's decision to commence the Adversary Proceeding on October 28th did not exceed the bounds of the New Mexico order modifying the automatic stay, this Court finds no error or violation of Sutro-Sandia's automatic stay.  See Noli, 860 F.2d at 1526 (Tax Court did not violate automatic stay because "Tax Court's bench opinion did not exceed the bounds" of bankruptcy court's order granting relief from automatic stay).

---

[7]   On November 8, 2004, Sutro-Sandia appealed Judge Starzynski's order modifying the automatic stay to the District Court of New Mexico.  See Dkt. 16, Exs. I at 4, J.  The issue was referred to a Magistrate Judge, who recommended the appeal be dismissed because Judge Starzynski did not abuse his discretion in modifying the automatic stay.  Id., Ex. K at 3.  On March 24, 2005, the District Court of New Mexico adopted the recommendation of the Magistrate Judge and affirmed Judge Starzynski's decision.  See Dkt. 20.

C.    **Judge Marlar Properly Denied Nelson's Notice of Appearance and Motions Because Nelson Was Not A Party to the Adversary Proceeding**

On November 8, 2004, Nelson filed a Notice of Appearance, a Request for Reconsideration, and a Request for Recusal (Bkr. Dkt. 75-77).  Judge Marlar denied all three requests.  Nelson challenges the denial of these requests as a denial of due process on the grounds that denial was without notice and a hearing.   The Court is not persuaded.

First, due process requires "notice reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  The Adversary Proceeding here arose from Hurt's bankruptcy, in which Nelson filed an objection that was denied and he never appealed.  Further, even though Nelson was not a party to the Wakefield Adversary Proceeding, Wakefield had notice that this Adversary Proceeding was pending and that the validity of the Wakefield Claim would be determined at the October 28, 2004 trial.  The Bankruptcy Court conducted the Adversary Proceeding and resolved the issues. Under these circumstances, the Court finds that Nelson, who was not a party to the Adversary Proceeding, was not deprived of due process.

Second, there was no denial of due process because Nelson had ample notice of, and an opportunity to contest, Judge Marlar's decision to commence the Wakefield Adversary Proceeding on October 28, 2004.  As shown by the motions Nelson filed after the Adversary Proceeding concluded, he did receive notice that the Adversary Proceeding was held on October 28th, notwithstanding Sutro-Sandia's filing for bankruptcy.[8]  More importantly, as shown by Judge Marlar's rulings, Nelson did receive an opportunity to be heard.  The fact

---

[8]  Nelson likely received notice from several sources.  First, he was a named creditor in Sutro-Sandia's bankruptcy, and thus would have received a copy of the order modifying the automatic stay.  Second, he was the president, sole director, and secretary of Sutro-Sandia, and thus would have received notice on behalf of the debtor.  Third, he was the sole officer, director, and shareholder of Wakefield, and thus likely received notice from Wakefield's counsel.

- 15 -

1    that none of his requests were successful does not lead to the conclusion that his due process

2    rights were violated, especially because such requests were properly denied.

3            **1.      Notice of Appearance and Motion for Reconsideration**

4            In his Notice of Appearance,[9] filed November 8, 2004, Nelson claims that Sutro-

5    Sandia filed a valid bankruptcy "regarding property which is subject to this bankruptcy and

6    adversary." (Dkt. 16, Ex. S.)  Nelson describes himself as a "valid and necessary creditor,"

7    and represents that "Norma Hurt" violated bankruptcy and federal law by "caus[ing] this

8    case to move forward after the filing of a bankruptcy of an interested party in New Mexico

9    without due process." (Id.)  Nelson then requests that the Arizona Bankruptcy Court

10   "Notice [him] with any and all actions connected with this case and adversary." (Id.)

11           In his Request for Reconsideration, also filed on November 8, 2004, Nelson argued

12   that Hurt violated various laws as well as the automatic stay issued in the New Mexico

13   bankruptcy case. (Dkt. 16, Ex. N.)  He asks the Court to reverse its" October 28th Order and

14   "sanction any party who was complicit in violating said laws." (Id.)

15           Judge Marlar rejected Nelson's Notice of Appearance and denied his Motion for

16   Reconsideration because Nelson was not a party to the adversary proceeding at issue, and

17   thus lacked standing to seek reconsideration of any orders issued therein.  Dkt. 16, Ex. O.[10]

18           Judge Marlar properly rejected Nelson's Notice of Appearance because intervention

19   in an adversary proceeding is governed by Fed.R.Civ.P. Rule 24, made applicable to

20   adversary proceedings by Bankruptcy Rule 7024.  See Bankr.R. 7024 ("Rule 24 F.R.Civ.P.

21   applies in adversary proceedings."); Advis.Comm.Note to Bankr.R. 7024 ("A person may

22   seek to intervene . . . in an adversary proceeding relating to the case under the Code.

23

---

24           [9]   Nelson's brief incorrectly asserts that his Notice of Appearance was filed "[p]rior to the

25   hearing and Order which is hereby appealed." (Dkt. 14 at 5:17-18.)  Actually, this document was filed
     on November 8, 2004, eleven days after Judge Marlar's October 28th Order (see dkt. 16, ex. S).

26

27           [10]  Alternatively, Judge Marlar denied the request on the ground that Nelson had no standing
     to argue that there was a violation of the automatic stay in Sutro-Sandia's bankruptcy.  See id.

28                                          - 16 -

1   Intervention . . . in an adversary proceeding is governed by this rule.  Intervention in a case

2   and intervention in an adversary proceeding must be sought separately.").  In the present

3   case, Nelson's Notice of Appearance did not properly request that he be permitted to

4   intervene in the Wakefield Adversary Proceeding.  Rather, the Notice merely stated that

5   Sutro-Sandia had filed for bankruptcy in New Mexico and requested that the "court Notice

6   [Nelson] with any and all actions connected with this case and adversary."  (Dkt. 16, Ex. S.)

7         Even if Nelson's Notice of Appearance were construed as a motion to intervene in

8   the Adversary Proceeding,[11] Judge Marlar would have been required to deny intervention.

9   Under Fed.R.Civ.P. 24(a), an applicant for intervention as of right must comply with four

10  requirements:  "(1) the application for intervention must be timely; (2) the applicant must

11  have a 'significantly protectable' interest relating to the property or transaction that is the

12  subject of the action; (3) the applicant must be so situated that the disposition of the action

13  may, as a practical matter, impair or impede the applicant's ability to protect that interest;

14  and (4) the applicant's interest must not be adequately represented by the existing parties in

15  the lawsuit."  Southwest Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 817 (9th Cir.

16  2001).  To trigger a right to intervene, an economic interest must be non-speculative,

17  concrete and related to the underlying subject matter of the action.  Arakaki v. Cayetano,

18  324 F.3d 1078, 1085, 1088 (9th Cir. 2003).

19        Reading Nelson's Notice of Appearance liberally, his ability to meet the

20  "significantly protectable interest" prong of Rule 24(a)(2) relates solely to his status as a

21  creditor of Sutro-Sandia with an interest in ensuring that he collects on his debt.  The Ninth

22  Circuit has previously rejected this type of economic interest, however.  In United States v.

23  Alisal Water Corp., 370 F.3d 915, 920-21 (9th Cir. 2004), the Ninth Circuit explained that

24  _____

25        [11]  Nelson cannot satisfy the first prong of permissive intervention because his Notice of
    Appearance asserts no independent basis for jurisdiction.  See Northwest Forest Res. Council v.

26  Glickman, 82 F.3d 825, 839 (9th Cir. 1996) (a court may grant permissive intervention where the
    applicant shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) his or her

27  claim or defense, and the main action, have a question of law or a question of fact in common).

28                                          - 17 -

1  the mere interest in the prospective collectability of a debt is insufficient to satisfy the

2  requirements of Rule 24(a)(2), unless that interest is related to the underlying subject matter

3  of the action.  In the present case, Nelson asserts no interest related to the underlying dispute

4  between Wakefield/Sutro-Sandia and Hurt other than that he is a creditor in the New

5  Mexico bankruptcy.  Because Nelson's interest in collecting his debt is in no way related to

6  the merits of the Wakefield Claim, the Bankruptcy Court properly rejected any unofficial

7  attempt to intervene in the Adversary Proceeding under <u>Alisal Water</u>.  <u>See</u> <u>id.</u>.

8       As shown above, the Bankruptcy Court properly rejected Nelson's Notice of

9  Appearance because he was not a party in the Adversary Proceeding and was not qualified

10  to intervene therein.  Therefore, the Bankruptcy Court correctly denied his Motion for

11  Reconsideration on the grounds that he was not a party to the Adversary Proceeding.  <u>See</u> <u>In</u>

12  <u>re Lake Country Invs.</u>, 255 B.R. 588, 595 n.9 (Bankr. D. Idaho 2000) (creditor in main

13  Chapter 11 case was entitled to be heard in case and to file any and all pleadings appropriate

14  in main case or its own adversary proceeding, but creditor was not a party to an adversary

15  proceeding brought by trustee against the stockholders of debtor-limited liability company's

16  member-owner and, thus, had no standing to file affidavits in trustee's lawsuit).

17       **2.    <u>Request for Recusal</u>**

18       Nelson argued that Judge Marlar was "incapable of overseeing fair and just

19  proceedings in this matter" because (1) Nelson filed a complaint of Judicial Misconduct

20  against him; and (2) Judge Marlar "caused this case to move forward after the filing of a

21  bankruptcy of an interested party."  (Dkt. 16, Ex. P.)  Judge Marlar denied the request

22  because it lacked merit and statutory support.  (<u>Id.</u>, Ex. Q.)  This Court agrees.

23       Motions to disqualify a bankruptcy judge from a pending matter are subject to the

24  provision of 28 U.S.C. § 455 alone.[12]  <u>See</u> <u>Seidel v. Durkin (In re Goodwin)</u>, 194 B.R. 214,

25  221(9th Cir. BAP  1996); Bankr.R. 5004(a).  Section 455 provides that any "justice, judge

26  _____

27       [12]  Although Nelson does not cite § 455, the Court broadly construes his *pro se* motion.

28                                         - 18 -

1    or magistrate of the United States shall disqualify himself in any proceeding in which his

2    impartiality might reasonably be questioned," 28 U.S.C. § 455(a), or when "he has a

3    personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary

4    facts concerning the proceeding."  Id. § 455(b)(1).

5            Reviewing the Bankruptcy Court's denial of the request to recuse for an abuse of

6    discretion, the "[t]he test is whether a reasonable person with knowledge of all the facts

7    would conclude that [his] impartiality might reasonably be questioned."  United States v.

8    Wilkerson, 208 F.3d 794, 797 (9th Cir. 2000).  A Judicial Complaint filed by Nelson against

9    Judge Marlar did not require recusal.  Indeed, if it did, a litigant could resort to the rankest

10   form of judge shopping by simply filing an action against a judge to force his or her recusal.

11   In addition, the applicable federal statutes do not require recusal in such cases.  Moreover,

12   "[a] judge's views on legal issues may not serve as the basis for motions to disqualify."

13   United States v. Conforte, 624 F.2d 869, 882 (9th Cir. 1980). Thus, Judge Marlar's decision

14   to hold trial in the Wakefield Adversary Proceeding on October 28th, after the New Mexico

15   bankruptcy judge modified the automatic stay in Sutro-Sandia's case, is not grounds to

16   recuse.  See Liteky v. United States, 510 U.S. 540, 555 (1994) ("[O]pinions formed by the

17   judge on the basis of facts introduced or events occurring in the course of the current

18   proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a

19   deep-seated favoritism or antagonism that would make fair judgment impossible.") The

20   record confirms that no reasonable person with knowledge of all the facts here would infer

21   either "deep-seated favoritism or antagonism" by Judge Marlar.

22           **3.       Motion for Reconsideration of Denial of Request for Recusal**

23           Judge Marlar entered the final judgment in favor of Hurt on November 10, 2004.

24   (Bkr. Dkt. 82 at 1.)  On November 12, 2004, Nelson filed a Notice of Appeal to this Court.

25   (Dkt. 2.)  On November 22, 2004, Nelson sought reconsideration of his Recusal Request.

26   On December 3, 2004, Judge Marlar denied the motion because a notice of appeal had been

27   filed, and thus the Bankruptcy Court lacked jurisdiction.  (Dkt. 16, Ex. R.)

28                                           - 19 -

1    Judge Marlar's decision in this respect is also correct. <u>See</u> <u>Burchinal v. Central</u>

2    <u>Washington Bank (In re Adams Apple, Inc.)</u>, 829 F.2d 1484, 1489 (9th Cir. 1987)

3    ("Generally a bankruptcy court has wide latitude to reconsider and vacate its own decisions.

4    A pending appeal, however, divests a bankruptcy court of jurisdiction.").

5    **D.    Hurt's Request for Sanctions**

6    Hurt's request that this Court impose sanctions against Nelson and his attorney on the

7    grounds that Nelson "persists in his unsubstantiated claims" and Mr. Slater "should know of

8    Nelson's deceit" (Dkt. 16 at 15-16), is denied.

9    Although Bankruptcy Rule 9011 authorizes this Court to impose sanctions when

10   serving as a bankruptcy reviewing court, <u>Hedges v. Resolution Trust Co.</u>, 32 F.3d 1360,

11   1364 (9th Cir. 1994), and there appears to be significant evidence of bad faith filings at the

12   bankruptcy court level by companies with whom Nelson is associated, Hurt has not

13   specifically demonstrated which of those particular filings were signed or submitted by

14   Nelson in violation of Bankruptcy Rule 9011(b).  Moreover, due to the uncertainty of the

15   Ninth Circuit's decision in <u>Pecan Groves</u>, <u>supra</u> at 10, this Court does not find that Mr.

16   Slater's appeal on behalf of Mr. Nelson was entirely frivolous.  <u>See</u> Bankr. Rule 9011(b)(2).

17                                  **CONCLUSION**

18   For the reasons set forth above the Court affirms the Bankruptcy Court's October 28,

19   2004 Order and November 10, 2004 Judgment in all respects.

20   **IT IS HEREBY ORDERED** that the Bankruptcy Court's Order dated October 28,

21   2004, and Judgment of November 10, 2004 are **AFFIRMED**.

22   **IT IS FURTHER ORDERED** that Appellant David Nelson's Bankruptcy Appeal is

23   **DISMISSED**.  (Dkt. 3.)

24   **IT IS FURTHER ORDERED** that Appellee Norma J. Hurt's request for sanctions is

25   **DENIED**.  (Dkt. 16 at 15-16.)

26   / / /

27   / / /

28
                                        - 20 -

1    **IT IS FURTHER ORDERED** that the Clerk of Court shall mail a copy of this Order

2    to the Honorable James M. Marlar, Bankruptcy Judge in the United States Bankruptcy Court,

3    District of Arizona.

4

5    DATED this 29th day of September, 2005.

6

7

8
Stephen M. McNamee
Chief United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28